UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>KATHLEEN MCCOY and JEAN MARIE<br>THOMPSON and STATE OF INDIANA<br>ex rel. KATHLEEN MCCOY and<br>JEAN MARIE THOMPSON,<br><br>        Plaintiffs<br><br>   vs.<br><br>MADISON CENTER,<br><br>        Defendant | Case No. 3:10-CV-259 RM |

## OPINION AND ORDER

This cause is before the court on defendant Madison Center's motion to dismiss the State of Indiana's complaint under Fed. R. Civ. P. 12(b)(1) and (6), and Count IV of the original complaint filed by relators Kathleen McCoy and Jean Marie Thompson under Fed. R. Civ. P. 12(b)(6). A hearing on the motion was conducted on March 4, 2011. For the following reasons, the court grants Madison Center's motion.

### I. BACKGROUND

In October 2005, Kathleen McCoy and Jean Marie Thompson filed suit against Madison Center on behalf of the United States and the State of Indiana alleging violations of the federal False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, and Indiana's False Claims and Whistleblower Act (IFCWA), IND. CODE § 5-11-5.5

*et seq.* (the Relators" complaint).[1] The United States declined intervention in January 2009; and, in June 2010 (more than four and a half years after the Relators' complaint was filed), the State of Indiana filed its notice of intent to intervene under IND. CODE § 5-11-.5.5-1 *et seq.* (Indiana's False Claims and Whistleblower Protection Act). The court granted the State's motion to unseal the Relators' original complaint on June 24, 2010; on June 29, 2010, the State filed a new complaint in its own name asserting state law claims for Medicaid fraud under IND. CODE § 12-15-23-7, common law fraud, breach of contract, and unjust enrichment based on Madison Center's alleged receipt of improper Medicaid payments. The State seeks reimbursement for the alleged overpayments, treble damages, civil penalties, attorney fees, and costs under IND. CODE §§ 12-15-23-8(a) and 34-24-3-1 *et seq.*.

---

[1] The court granted the Relators' motion to file their complaint *in camera* and under seal in Cause No. 3:05mc50 on December 13, 2005 [Doc. No. 2], but the sealed complaint was never docketed. The Relators' complaint was unsealed on June 24, 2010; and five days later the Clerk's Office administratively closed Cause No. 3:05mc50, with a notation that "all further entries in this case should be made in 3:10cv259." Although the Relators' complaint was and is still pending, it was never docketed under the new cause number. It appears on the court's docket only as an attachment to the Relators' original motion to file under seal in 3:05mc50 [Attach. No. 3 to Doc. No. 1], and as an attachment to the State of Indiana's complaint in this case [Attach. No. 1 to Doc. No. 1]. In accordance with 31 U.S.C. § 3730(b)(3) and Fed. R. Civ. P. 4, the State of Indiana served Madison Center with copies of both the Relators' complaint and its complaint on June 29, 2010 (*see* Doc. No. 3). The procedural history in this case will be corrected to reflect all prior proceedings in 3:05mc50, and the Clerk of Court will be directed to file the Relators' complaint as of the date of the original filing under seal in Cause No. 3:05mc50.

Madison Center moved to dismiss Count IV of the Relators' complaint (the Relators' state law claim) under Rule 12(b)(6), and to dismiss the State's complaint in its entirety under Fed. R. Civ. P. 12(b)(1) and (6).

## II. STANDARD OF REVIEW

The court takes the complaints' factual allegations as true and views them in the light most favorable to the plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernard v. United Township High School Dist. 30, 5 F.3d 1090, 1091 (7th Cir. 1993); Gomez v. Illinois State Bd. of Education, 811 F.2d 1030, 1033 (7th Cir. 1987). Dismissal is proper only if it is clear from the pleadings that the plaintiffs can prove no set of facts upon which relief could be granted. Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007); Forseth v. Village of Sussex, 199 F.3d 363, 368 n.6 (7th Cir. 2000). The court can't look beyond the pleadings, but can consider documents incorporated by reference in, or attached to, the pleadings, *see* FED. R. CIV. P. 10(c), and all uncontested allegations to which the parties had an opportunity to respond are taken as true. United States v. Wood, 925 F.2d 1580, 1581-1582 (7th Cir. 1991).

To withstand a motion to dismiss, the complaint must allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." Brooks v. Ross, 578 F.3d 574, 581 (7th Cir.2009) (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S. at 556). A plausible claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). The test on a motion to dismiss is whether the claim is "plausible" – whether it "has a moderately high likelihood of occurring." In Re: Text Messaging Antitrust Litigation, 630 F.3d 622, 629 (7th Cir. 2010). "[T]he complaint must establish a nonnegligible probability that the claim is valid; but the probability need not be as great as such terms as 'preponderance of the evidence' connote." Id.

III. ANALYSIS

A. THE RELATORS' IFCWPA CLAIM (COUNT IV)

Madison Center contends that the Relators' claim under Indiana's False Claims and Whistleblower Protection Act (IFCWPA), IND. CODE § 5-11-5.5-1 *et seq.*, should be dismissed because the statute wasn't enacted until 2005, didn't exist at the time the activity giving rise to the Relators' claims occurred, and doesn't contain a retroactive provision or evidence an express intent on the part of the legislature to apply it retroactively. Citing Miller Brewing Co. v. Indiana Dept. of State Revenue, 903 N.E.2d 64, 71 (Ind. 2009).

The Relators maintain that there's no reason to address retroactivity because they've alleged continuing misconduct. But as Madison Center correctly points out, Medicaid fraud must be pleaded with specificity under FED. R. CIV. P. 9(b), and the Relators haven't identified the who, what, when, where or how of any fraudulent activity after 2003. *See* Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993,

4

998 (9th Cir. 2010); U.S. ex rel. Pervez v. Beth Israel Medical Center, 736 F.Supp.2d 804 (S.D.N.Y. 2010); U.S. ex rel. Crennen v. Dell Marketing, L.P., 711 F.Supp.2d 157 (D. Mass. 2010).

To withstand a motion to dismiss, the plaintiffs must show that "it is plausible, rather than merely speculative, that [they are] entitled to relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir.2008) (citations omitted). The allegations in Count IV of the Relators' complaint are phrased in the past tense, *i.e.*, "the defendant knowingly presented or caused to be presented, false or fraudulent claims . . .," and "the defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts . . .." While Count IV contains a cursory allegation that "the State of Indiana has been damaged, and continues to be damaged," (Relators' Cmplt. ¶ 123), such an allegation lacks the specificity required to allege continuing fraud under Rule 9(b). With one exception, Paragraphs 1-105 of the Relators' complaint (which were incorporated by reference) also lack any specific allegations of continuing wrong. The exception is contained in paragraph 77, which states:

> The Medicaid audit did not address the time period of May 31, 2002 to the present during which Madison Center has continued to submit claims for reimbursement for services provided to Medicaid-eligible children where documentation in the medical record is inadequate and not provided in a timely manner as required by Medicaid regulations.

But that allegation isn't specific enough: it lacks specificity as to the who, what, when, where or how of any fraudulent activity after June 2003, is unsupported by

5

any specific examples, and so doesn't meet the particularity requirements of Rule 9(b). See U.S. ex rel. Bledsoe v. Community Health Systems, Inc., 501 F.3d 493, 510-11 (6th Cir. 2007); Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir.), *cert. denied*, 549 U.S. 889 (2006); U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1310 (11th Cir. 2002).

The Relators don't dispute that the IFCWPA doesn't contain a retroactive provision or evidence an express intent on the part of the legislature to apply it retroactively. Accordingly, Count IV of their compliant must be dismissed.

The Relators have requested leave to amend their complaint in the event their state law claim was dismissed. The undue delay in this case isn't attributable to the Relators, and while the prospects of recovery seem dim since Madison Center is, by all accounts, defunct, FED. R. CIV. P. 15(a) provides that leave to amend "shall be freely given when justice so requires."

### B. THE STATE'S COMPLAINT

Madison Center contends that the State's complaint should be dismissed in its entirety under FED. R. CIV. P. 12(b)(1) because the court lacks subject matter jurisdiction, and/or under FED. R. CIV. P. 12(b)(6) because the State's claims don't relate back to the filing of the Relators' complaint under either 31 U.S.C. § 3731(c) or FED. R. CIV. P. 15(c), and are barred by the applicable six-year statutes of limitations (IND. CODE § 34-11-2-7(1) and (4) and IND. CODE § 34-11-2-9). Citing U.S. ex rel. Miller v. Bill Harbert Int'l Construction, Inc., 608 F.3d 871, 877-881

6

(D.C. Cir. 2010)(per curiam); Asher v. Unarco Material Handling, Inc., 596 F.3d 313 (6th Cir. 2010). Assuming *arguendo* that the State's claims aren't otherwise barred, Madison Center contends that the complaint isn't ripe because the State hasn't exhausted its administrative remedies under IND. CODE §§ 12-15-13-3 and 12-15-21-3, and 405 IAC 1-1.5-2. Citing Lake Cty. Sheriff's Corrections Merit Bd. v. Peron, 756 N.E.2d 1025, 1028 (Ind. App. 2001).

1. *Jurisdiction*

The State contends that the court has jurisdiction under 31 U.S.C. § 3732(b):

> The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730.

Madison Center maintains that 31 U.S.C. § 3730(b)(5) expressly prohibits the State from intervening with respect to the federal claims asserted in the Relators' complaint or bringing a related action based on the facts underlying the Relators' pending action, and that 31 U.S.C. § 3732(b) doesn't authorize the State to maintain an independent action. It cites in support Wisconsin v. Amgen, Inc., 516 F.3d 530, 532 (7th Cir. 2008) and Vermont Agency of Natural Resources v. U.S. ex rel. Stevens, 529 U.S. 765 (2000).

Madison Center's reliance on Stevens and Amgen is not persuasive. The Stevens Court held that a state wasn't a "person" for purposes of *qui tam* liability

7

under 31 U.S.C. § 3729(a). 529 U.S. at 781-788. The <u>Stevens</u> Court's reasoning also might support a finding that a state isn't a "person" within the meaning of 31 U.S.C. § 3730(b), and that §3730(b) therefore doesn't bar suits by the State. <u>Id.</u>; *see also* <u>U.S. ex rel. Long v. SCS Business & Technical Institute, Inc.</u>, 173 F.3d 870, 879 (D.C. Cir. 1999 ) (dictum).

The court of appeals took a slightly different approach in <u>Wisconsin v. Amgen, Inc.</u>, 516 F.3d 530 (7th Cir. 2008), but reached the same conclusion – 31 U.S.C. § 3730(b)(5) doesn't prohibit the State from intervening in an action under the FCA or filing a related action. The court of appeals reasoned that § 3730(b)(5) prohibits other relators from intervening or filing related action, but a state isn't a relator — it's not "seeking a reward for obtaining a judgment in favor of someone else," it's seeking to recover a loss inflicted on it by the defendant. *See* <u>Wisconsin v. Amgen, Inc.</u>, 516 F.3d at 532-533. "Such a suit is not 'related' to a *qui tam* suit, within the meaning that the word bears in section 3730(b)(5) interpreted in light of the legislative purpose." <u>Id</u>. at 533; *see also* <u>U.S. ex rel. Long v. SCS Business & Technical Institute, Inc.</u>, 173 F.3d at 880 (Section 3732(b) could be read to create "what is in effect an exception to § 3730(b)(5)'s apparent general bar on intervention by all other parties except for the United States").

The legislative history of § 3732(b) says it was intended to allow "State and local governments to join State law actions with False Claim Act actions brought in Federal district court if such actions grow out of the same transaction or occurrence . . ." <u>U.S. ex rel. Long v. SCS Business & Technical Institute, Inc.</u>, 173

F.3d at 880 (*quoting* S. REP. NO. 345, 99th Cong., 2d Sess., at 16 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5281). 31 U.S.C. § 3732(b) thus confers supplemental jurisdiction on the district courts "over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrences as [a *qui tam* suit] brought under Section 3730," and authorizes permissive intervention by states for recovery of state funds, despite 31 U.S.C. § 3730(b)(5)'s general bar on intervention by all other "person[s] other than the Government". *See* Wisconsin v. Amgen, Inc., 516 F.3d at 532-533; U.S. ex rel. Long v. SCS Business & Technical Institute, Inc., 173 F.3d at 880; Hawaii v. Abbot Laboratories, Inc., 469 F.Supp.2d 842, 849-851 (D. Haw. 2006).

### 2. *Timeliness*

The parties agree that the State's right to intervene is subject to FED. R. CIV. P. 24, but they disagree about whether the State's intervention and complaint was timely.

The State argued in its response brief and at the hearing that it met the requirements for intervention as of right under Rule 24(a), and for permissive intervention under Rule 24(b), and that the court should allow it to intervene even though the statute of limitations may have passed, absent prejudice to the original parties. Madison Center contends that the State's intervention is untimely, and

that it's complaint is barred by the applicable statutes of limitations and should be dismissed in its entirety under FED. R. CIV. P. 12(b)(6).

The requirements for intervention under Rule 24(a) and Rule 24(b) differ in some respects. Most notably today's purposes, subsection (a) requires an unconditional right to intervene under federal statute, while subsection (b) applies when the federal statute gives a conditional right to intervene. Both require the State to file a timely motion to intervene.

The State's right to intervene under 31 U.S.C. § 3732(b) is conditional — the action must be based on State law (not federal law) for the recovery of funds paid by the State, and must "arise from the same transaction or occurrence as [the *qui tam* suit] brought under section 3730." 31 U.S.C. § 3732(b). As the D.C. Circuit Court of Appeals noted in U.S. ex rel Long v. SCS Business & Technical Institute, Inc., 173 F.3d at 880, "the more obvious reading of 3732(b) . . . is that it authorizes permissive intervention by states for recovery of state funds (creating what is in effect an exception to 3730(b)(5)'s apparent general bar on intervention by all other parites except for the United States)." "Permissive intervention is wholly discretionary with the district court." Keith v. Daley, 764 F.2d 1265, 1272 (7th Cir 1985). A totality of the circumstances test governs whether the motion was made in a timely fashion, considering, among other things, "the length of time the intervener knew or should have known of his interest in a case." South v. Rowe, 759 F.2d 610, 612 (7th Cir. 1985). "An untimely motion will fail even if the

other requirements of the Rule are satisfied." United States v. City of Chicago, 908 F.2d 197, 199 (7th Cir. 1990).

From June 2003 through 2004, Ms. McCoy and Dr. Thompson provided information to the State Medicaid Surveillance and Utilization Review Unit about Madison Center's allegedly fraudulent billing practices and efforts to "cover up" deficiencies in patient files in preparation for an upcoming Medicaid audit. Health Care Excel, a State Medicaid program contractor, conducted an audit from June 30 to July 8, 2003 of Madison Center's records from March 1, 2001 to May 31, 2002. In a sample of 500 claims, the auditors are said to have found 298 claims with errors amounting to $41,862.74 in overpayments. By extrapolation, the State opined that Madison Center received more than $10 million in overpayments from March 1, 2001 to May 31, 2002.

The Relators filed their *qui tam* action on behalf of the United States and the State of Indiana in October 2005, and served the state with a copy of that complaint. The Attorney General's office appeared for the State in late December, 2005, and requested a sixty-day extension of time to investigate the Relators' claims and decide whether to intervene. The court granted that motion and the five motions that followed. Under the court's order of March 20, 2009, the State was given a final extension of time to and including June 15, 2009 within which to file its motion to intervene. The State didn't comply, and waited more than a year after the deadline had expired to file its notice of intervention.

The State learned of the alleged fraudulent conduct no later than June 2003, when Ms. McCoy contacted the state Medicaid Surveillance and Utilization Review Unit, and by July 2003 had confirmed by an audit that Madison Center had received overpayments in 2001 and 2002, estimated at more than $10 million, as a result of billing errors. Seven years later, more than four and a half years after the Relators filed their original *qui tam* action, and almost one year after the statutes of limitations expired, the State filed and served its notice of intervention and complaint to recover those overpayments, together with the Relators' complaint. The court can't describe the State's intervention as anything other than untimely.

Even had the State intervened in a timely fashion, its claims don't arise out of the same conduct, transaction, or occurrence set out in the original pleading and would be time-barred. The State conceded at the hearing that the statute of limitations in this case is six-years, but contends that the limitations period isn't an issue because (1) its complaint relates back to the filing of the Relators' original complaint under 31 U.S.C. § 3731 (which, according to the State, applies to both federal and state governments), and (2) was tolled by the doctrine of continuing wrong and didn't begin to run until the State made an official demand for repayment in February 2005. The court disagrees.

It is a "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Alaska Dept. of

Environmental Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)). The FCA is a federal statute, enacted during the Civil War, penalizing the knowing submission of false or fraudulent claims to "the United States Government," 31 U.S.C. § 3729(a) and (c), and authorizing private enforcement through *qui tam* actions, which are brought "for the person and *for the United States Government . . . in the name of the Government.*" 31 U.S.C. § 3730(b)(1); *see* U.S. ex rel. Miller v. Bill Harbert Intern. Const., Inc., 608 F.3d 871, 875, 883 (D.C. Cir. 2010); U.S. ex rel. Bledsoe v. Community Health Systems, Inc., 501 F.3d 493, 502-503 (6th Cir. 2007). Section 3730(b) also provides that:

> (2) . . . The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.
> (3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal . . .
> (4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall–
> > (A) proceed with the action, in which case the action shall be conducted by the Government; or
> > (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.
> (5) When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

Under § 3731(c):

> If the Government elects to intervene and proceed with an action brought under 3730(b), the Government may file its own complaint or amend the complaint of a person who has brought an action under

13

section 3730(b). . . . For statute of limitations purposes, any such Government pleading shall relate back to the filing date of the complaint on the person who originally brought the action, to the extent that the claim of the Government arises out of the conduct, transactions, or occurrences set forth, or attempted to be set forth, in the prior complaint of that person.

The "Government" to which § 3729(a) and (c), § 3730(b) and § 3731(c) refer is the United States Government, as shown by the statutes' plain language and that only the United States Government may elect to intervene and proceed with an action brought under § 3730(b). 31 U.S.C. § 3730(b)(2). *See also* U.S. ex rel. Miller v. Bill Harbert Int'l Construction, Inc., 608 F.3d at 883 (the relation back provision in § 3731(c) clearly applies only to amendments or complaints filed by the United States Government). While § 3732(b) might authorize permissive intervention by states in a *qui tam* suit under the FCA for recovery of state funds, it doesn't authorize the state to proceed with the underlying action under § 3730(b) to recover federal funds. *See* U.S. ex rel. Long v. SCS Business & Technical Institute, Inc., 173 F.3d at 880.

If the State's claims are to relate back, they must do so under FED. R. CIV. P. 15(c)(1)(B), which permits relation back of an amendment to a pleading when: "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." But the State didn't seek to amend the Relator's complaint. Indeed, it appears from the oral and written arguments presented that it has all but abandoned the Relators and their claims. The State filed a new complaint in its

14

own name, asserting new claims that the statutes of limitation would have barred had they been brought in state court. The only thing the two complaints appear to have in common is that they both involve claims of Medicaid fraud.

The State's complaint alleges in relevant part that:

> 25. Madison Center failed to comply with the billing requirements explicitly stated on both the Provider Agreement and contained within the MRO Provider Manual. These incorrect billings resulted in false claims submitted to the State, and their ongoing nature has resulted in myriad false and fraudulent claims presented to the State and paid to Madison Center.
>
> ***
>
> 27. Madison Center failed to document their billings correctly by obtaining all necessary signatures at the correct time.
>
> 28. Madison Center failed to maintain documentation to support claim submissions to the Indiana Health Coverage Program.
>
> 29. Madison Center utilized incorrect units of service. Documentation provided did not always support the number of units billed and paid.
>
> 30. Madison Center lacked current patient treatment plans for certain dates of service.
>
> 31. A contractor for the State Medicaid program audited Madison Center from June 30, 2003 through July 8, 2003 for the time period extending from March 1, 2001 through May 31, 2002. In a statistically valid sample of 500 claims, the auditors found 298 claims with errors amounting in overpayments of $41,862.74 to Madison Center.
>
> 32. During the contractor's audit period of March 1, 2001 to May 31, 2002, an extrapolation of the amount of fraudulent overpayment is $10,710,414.58.
>
> ***

42. Through the acts described above, Defendant Madison Center has knowingly made, used, and caused to be made and used, false records and statements to get false or fraudulent claims paid through government reimbursement under Medicaid.

43. Through the acts described above, Defendant knowingly presented, or caused to be presented, false or fraudulent claims, to the United States Government, in order to obtain government reimbursement provided under Medicaid.

44. As a result of these false claims, the State of Indiana has been damaged and continues to be damaged.

***

55. Since at least March 1, 2001, Madison Center caused false or fraudulent claims to be made to the State of Indiana and received overpayments from Medicaid.

***

58. The State of Indiana did, in fact, rely upon Defendant's false and fraudulent claims. As a result, since at least March 1, 2001, the State of Indiana has paid substantially more for Madison Center claims than it should have and paid for Madison Center claims that were ineligible for reimbursement.

These allegations form the basis of the State's fraud claims, as well as its breach of contract and unjust enrichment claims.

The Relators' complaint, while covering the same time period, is limited to allegations of fraud relating to claims Madison Center submitted on behalf of juvenile Medicaid patients and their siblings for day treatment/partial hospitalization services (allegations which, according to the Relators, weren't addressed in the State's Medicaid audit) and claims of retaliation. The Realtors allege that Madison Center: (1) routinely submitted claims for day treatment/partial hospitalization services provided to Medicaid-eligible children

16

and their siblings without adequate documentation of medical necessity or a treatment plan, when the patient received little or no treatment services, and where no reports had been written to document the results of psychological testing; (2) fabricated and altered medical records to justify claims for reimbursement for services provided to Medicaid-eligible children; and (3) improperly billed for time spent signing patient charts, and submitted claims for alcohol and drug screening evaluations and substance abuse treatment during periods it did not have a certified substance abuse counselor on staff and where no or inadequate treatment services were provided. They seek a cease and desist order, treble damages and civil penalties the damages the United States and the State of Indiana has sustained under 31 U.S.C. § 3730(d) and IND. CODE § 5-11-5.5-6, Ms. McCoy's reinstatement and damages associated with her "retaliatory constructive discharge" and the "retaliatory demotion" and harassment of Dr. Thompson under 31 U.S.C. § 3730(h), attorneys' fees and costs.

The State's claims are based on its findings from the Medicaid audit conducted in June 2003 for the period from March 1, 2001 through May 31, 2002 — findings that reportedly didn't include claims for day treatment services provided to Medicaid eligible children and their siblings — and don't arise out of the same conduct, transaction, or occurrence set out or attempted to be set out in the Relators' original pleading. The State's complaint appears to allege different violations of the state's Medicaid fraud statute and different legal theories, and so doesn't relate back to the original timely-filed complaint under Rule 15(c). *See* U.S.

17

ex rel. Miller v. Bill Harbert Int'l Construction, Inc., 608 F.3d 871, 880-881 (D.C. Cir. 2010) ("Relation back generally is improper when the new pleading 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth;' 'attempts to introduce a new legal theory based on facts different from those underlying the timely claims;' or, although it 'shares 'some elements and some facts in common' with the original claim . . . its effect is 'to fault [the defendants] for conduct different from that identified in the original complaint.'"); United States ex rel. Bledsoe v. Community Health Systems, 501 F.3d 493 (2007) (applying the relation back provisions of Rule 15 in a *qui tam* case involving claims for reimbursement from Medicare and Medicaid).

The State's claims arose no later than in July 2003 (when the audit was completed and the State knew or reasonably should have known the facts material to its cause of action). The applicable six-year statutes of limitation would have run at the very latest in July 2009, nearly a year before the State intervened and filed its complaint. Accordingly, the State's claims are time-barred unless grounds exist for equitable tolling.

The State contends that it has sufficiently pleaded continuing violations of the Medicaid statute and Provider Agreement, effectively tolling the statutes of limitation. The court must again disagree.

Under FED. R. CIV. P. 9(b), the State must plead fraud (the basis of each of its claims, including the breach of contract and unjust enrichment claims in Counts IV and V) with particularity. *See* Windy City Metal Fabricators & Supply,

Inc. v. CIT Technology Financing Servcies, Inc., 536 F.3d 663, 669 (7th Cir. 2008); General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997). It hasn't done so. The State's allegations are based on generalized accusations of wrongdoing without any specificity as to the who, what, when, where or how of any fraudulent activity before or after June 2003, are unsupported by any specific examples, and don't meet the particularity requirements of Rule 9(b). *See* U.S. ex rel. Bledsoe v. Community Health Systems, Inc., 501 F.3d at 510-511; Sanderson v. HCA-The Healthcare Co., 447 F.3d at 877; U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d at 1310.

Only two references in the State's complaint even hint at any "continuing wrong" — the reference to the "ongoing nature" of the "incorrect billings" and "false claims" in paragraph 25, and the assertion that the State "continues to be damaged" in paragraph 44. Neither is sufficient under Rule 9(b). The State's complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6), even if had it related back to the filing of the original complaint under 31 U.S.C. § 3731 or Rule 15(c).

### 3. *Failure to Exhaust*

Exhaustion of the administrative remedies available under Indiana law might have expedited proceedings in this case by identifying the claims in dispute and the amount of the alleged overpayments, but Madison Center has provided no authority for the proposition that the State was required to exhaust its

19

administrative remedies when, as here, the overpayments were allegedly acquired by fraud. The court needn't resolve the issue, however, in light of its previous findings and conclusions.

IV. CONCLUSIONS

For the foregoing reasons:

(1) the court GRANTS Madison Center's motion to dismiss the State of Indiana's complaint in its entirety and Count IV of the Relators' complaint [Doc. No. 11];

(2) The Relators shall have to and including May 31, 2011 within which to file an amended complaint; and

(3) In an effort to correct the record to accurately reflect prior proceedings, the Clerk of Court is directed to transfer all prior proceedings in Cause No. 3:05-MC-50 to the docket in this case, and to file the Relators' complaint (attached to the motion to seal in 3:05-MC-50) as of December 13, 2005, the date of the original filing under seal in Cause No. 3:05-MC-50.

SO ORDERED.

ENTERED:  May 9, 2011

/s/ Robert L. Miller, Jr.
Judge
United States District Court